# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

FILED
SEP 27 2012
CLERK, US DISTRICT COURT
NORFOLK, VA

JANICE SIGNORE )
128 Brewer Street )
Suffolk, VA 23434 )
    Plaintiff, ) Civil Action No.: 2:12cv539
)
vs. )
) **JURY DEMANDED**
BANK OF AMERICA, N.A. and )
BAC HOME LOANS SERVICING, LP )
)
    Defendant. )
_____ )

## COMPLAINT

Plaintiff Janice Signore brings this suit for compensatory damages to make her whole for employment discrimination, including retaliation, she suffered while working as a contractor employee as a Customer Relations Manager ("CRM") in the Modifications Department at the 2 Commercial Place, Norfolk, Virginia location of Bank of America. Plaintiff maintains that Bank of America ("BoA") discriminated against Plaintiff by failing to hire her as a full time employee based on unlawful discrimination. Plaintiff, who suffers fatigue and lack of stamina from prior battles with breast cancer and Hodgkin's lymphoma, was subject to unlawful discrimination in violation of the Americans with Disabilities Act (ADA), as amended, 42 U.S.C. §§ 12101-12213, *et seq.* and the Virginia Human Rights Act, VA Code 2.2-3900, *et seq.*; that Plaintiff's supervisor treated her more harshly than she treated Plaintiff's other co-workers in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623, her supervisor maintaining on at least one occasion that "you can always teach an old dog new tricks." Plaintiff further claims that she was discriminated against based on her religious beliefs in violation of Title VII of the Civil Rights Act, 42 U.S.C. 2000e2(a)(1) after Plaintiff politely told her supervisor that the daily Christian devotions and bible verses sent to CRM's over the office

email were making her uncomfortable. Plaintiff's supervisor's public brow beatings and fixation with her performance was extremely stressful for Plaintiff who sought "help from unit manager, Brent Wentworth, which only resulted in retaliation by her supervisor for Plaintiff having "gone over her head." The supervisor's campaign of harassment and intimidation and retaliation directed at Mrs. Signore created a hostile work environment that eventually resulted in Plaintiff's constructive discharge from BoA in January 2012.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff Janice Signore was hired in June 2011 through DYSIS for a position as a Customer Relationship Manager (CRM) in the Modifications Department of Bank of America ("BoA") at the 2 Commercial Place location in Norfolk, Virginia. At all times material hereto, she was a CRM working in the City of Norfolk, Virginia until she was constructively discharged in January 2012.

3. Defendant Bank of America, N.A. is a Delaware Corporation with its principal offices located at 101 S. Tyron Street in Charlotte, North Carolina.

4. Defendant Bank of America Home Loans Servicing, LP is a subsidiary of Bank of America, N.A., located at 4500 Park Grenada in Calabasas, employs over 500 individuals and is an employer engaged in interstate commerce subject to the Title VII, the ADA and the ADEA.

5. Plaintiff received notice dated as mailed on June 27, 2012 from the Equal Employment Opportunity Commission (EEOC), informing her that the EEOC was terminating its processing of the charge of discrimination she had filed with the EEOC under the ADA and Title VII. This suit has been filed within ninety (90) days of plaintiff receiving that "Right to Sue Notice."

6. This Court has subject matter jurisdiction over this complaint by virtue of Title VII of the Civil Rights Act, 42 U.S.C.§ 2000e; Age Discrimination in Employment Act of 1967,

29 U.S.C. § 623; Americans with Disabilities Act (ADA), as amended, 42 U.S.C. §§ 12101-12213, *et seq.* and the Virginia Human Rights Act, VA Code 2.2-3900, *et seq.*

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendants can be found to reside and transact business in the Eastern District of Virginia. At all times relevant, Defendants regularly conducted substantial business within and made significant revenue within the Eastern District of Virginia, and a substantial part of the events giving rise to this action occurred in this judicial district.

## FACTUAL BACKGROUND

8. Bank of America hired Plaintiff Janice Signore through DYSIS in June 2011 for a temporary position as a Customer Relationship Manager (CRM) in the Modifications Department at the 2 Commercial Place, Norfolk, Virginia location.

9. After two of the 4 scheduled weeks of training, one Tammy Jackson returned to work from vacation to begin a new position as supervisor to Plaintiff and 25 other CRMs. Almost immediately, Ms. Jackson began a campaign of harassment and intimidation directed at Plaintiff, the oldest member of the group of CRMs at 62 years of age, creating a hostile work environment that eventually resulted in Mrs. Signore's resignation.

10. From the beginning, Plaintiff observed that Ms. Jackson was uneasy about her new supervisory position, presumably because she had far less experience in mortgages, modifications, and real estate than many of the CRMs she was supervising. Once Ms. Jackson assumed the role of supervisor of the CRMs, she quickly began to single out Plaintiff, assuming her to be more vulnerable because of her age. Again, after only two of the four weeks of training, Ms. Jackson told Plaintiff to "be prepared" because she would "be back for a side by side" to see what Plaintiff knew on the computer. Plaintiff attempted to explain that the training was still in theory, not yet on the computer but that did not interest Ms. Jackson.

11. On one occasion, not long after Ms. Jackson began, she browbeat Plaintiff so profoundly in front of everyone that afterward, two of the younger women came to Plaintiff and offered their help and support. This was followed by several weeks of excessive fixation on Plaintiff's performance, despite Plaintiff's steady progression and successful mastery of her job responsibilities. Plaintiff was not the only victim of Ms. Jackson's discriminatory actions; when she was not focusing on Plaintiff, Ms. Jackson turned her attention to another older woman and did the same thing to her.

12. Ms. Jackson's behavior was extremely stressful and Plaintiff and her teammate went individually to their unit manager, Brent Wentworth, to complain about Ms. Jackson. When Ms. Jackson found out that they had complained to Mr. Wentworth, Plaintiff explained to her that she was comfortable with the learning curve and confidant that she could to the work. Ms. Jackson's response was that "you can always teach an old dog new tricks." Later that day, she let Plaintiff know that she did not like the fact that I went over her head. This type of comment was a common occurrence. At one of our team meetings, Ms. Jackson made the comment that "old people get sick more than young people" and then remarked, "I guess I should not have said that."

13. In addition to treating employees differently based on their age, Ms. Jackson, along with the other supervisors also demonstrated discriminatory treatment for those employees with disabilities. Plaintiff has had cancer twice and watched as another employee who suffered from diabetes, was openly discriminated against.

14. Plaintiff was retaliated against based on her religious beliefs. It was normal practice for Ms. Jackson to send daily Christian devotions and bible verses to the CRMs over the office email. These emails contained devotions and verses from the old and new testaments and Ms. Jackson applied her version of those texts to how the team behaved that particular day.

According to Plaintiff, they were "not intended to be uplifting but rather, to berate you." Ms. Jackson never copied the unit manager because she knew with a diverse religious base she may offend someone, but she continued to send her Christian values out to everyone anyway. Plaintiff politely told her and subsequently the unit manager that she was uncomfortable with it but Ms. Jackson continued. There were other people who were not Christians on the team who commented at how offended they were by Ms. Jackson's lack of sensitivity to other religions.

15. Plaintiff tried to ignore the hurtful and embarrassing personnel practices of Ms. Jackson and diligently perform her job responsibilities in a work environment that was hostile at best. Plaintiff received excellent reviews for her work performance.

16. In the course of Plaintiff's employment with Bank of America, she became aware of business practices that caused her great concern. She noticed that, on many occasions, Bank of America deliberately withheld information from their customers which caused a delay in processing a modification sought by the customer to help save their home from foreclosure. For example, a customer would call and complain that the courier called them and made the appointment for the closing of their modification then never showed up for the closing.

17. The customer called again and made another appointment and the courier would show up with the closing documents but pages were missing that he/she needed to notarize. The paperwork was sent to Bank of America but because of the missing docs, the closing was incomplete. It is important to remember that time is of the essence in such a scenario and the Bank felt they were not at fault and cancelled the modification, placing the home once again in jeopardy of foreclosure. The paperwork needed was supposed to come from underwriting in Texas, and Plaintiff, as the customer relationship manager, was not able to access this paperwork to print out and send it to the customer. Nevertheless, the customer would call several more times as documented in the files. Each time, Plaintiff had to inform him or her that another foreclosure

date was in the works. In each example, the customer complied with every step of the process and due only to the mismanagement of the file by two supervisors, the customer likely lost his or her home. Plaintiff felt helpless in this process. On September 7, 2012, Plaintiff lodged a Complaint under the American Recovery and Reinvestment Act of 2009 on the United State's Government's official website for filing such complaints, and is awaiting her Right to Sue notification.

18. In January 2012, Ms. Jackson used a conversation about Snack Day and a feigned offense to recommend Plaintiff's termination. It was a practice at the office for employees to take turns providing snacks on Snack Day. Plaintiff, due to her prior battles with breast cancer and Hodgkin's lymphoma, suffers fatigue and a lack of stamina at the end of the day. Feeling that she might not be able to shop for snacks after working a 10 hour day, she attempted to discuss an alternative with Ms. Jackson for her turn on Snack Day. Ms. Jackson simply became upset and humiliated Plaintiff with a scathing email to the team that "it was an unhappy day on snack day" and proceeded to cancel the day altogether and eliminate Plaintiff's turn. This was simply another attempt by Ms. Jackson to discredit and demoralize Plaintiff.

19. The following day, Plaintiff received what was called a "final warning," despite the fact that she had not received any previous warnings. In fact, her reviews all along were stellar. But on this day, Plaintiff came to work early and was on the phone when Ms. Jackson walked by her desk and said "Good Morning." Plaintiff was on the phone with her head set on but Ms. Jackson abruptly turned around and snapped, "You did not look at me when I said good morning!" Plaintiff tried to explain that she was on the phone but Ms. Jackson proceeded directly to the office of the Unit Manager, Mr. Wentworth. Plaintiff was subsequently called into the office and asked about not saying "Good Morning" and Snack Day. When Plaintiff returned to her seat, she received a call from DYSIS and an email to call them. When she called them, she

was told that she was on a final warning. Mr. Wentworth never mentioned anything about a final warning so Plaintiff went and asked him about it, but he said he knew nothing about it. Apparently, Ms. Jackson put Plaintiff on a final warning without discussing it with her Unit Manager, Mr. Wentworth.

20. Ms. Jackson's behavior and the timing of her placing Plaintiff on "final warning" was not coincidental; it was a strategic move to expedite Plaintiff's removal from the office. Not only was Plaintiff in the midst of dealing with daily harassment from Ms. Jackson, but she was consistently faced with the dilemma of trying to help a customer who was losing his home because of paperwork not being in order for his modification closing. In fact, the day that Ms. Jackson placed Plaintiff on "final warning," she reprimanded Plaintiff for giving a customer the number of a second supervisor to call, even though it was policy to do so.

21. Plaintiff could no longer cope with the hostility directed at her by Ms. Jackson. Plaintiff is a 62 year old Caucasian female. Ms. Jackson is an African American, approximately 35 years of age. Exhausted by the hostile work environment, Plaintiff believed it was futile as well as damaging to her health to continue working at Bank of America.

22. On January 13, 2012, Plaintiff filed a charge complaint with the EEOC relating to her age, religion, disability and retaliation playing a role in Bank of America's violations of federal law relating to the constructive discharge from her employment. Plaintiff received her right to sue letter on June 27, 2012.

23. Bank of America's conduct is clearly willful and wanton and prospectively warrants punitive damages under these statutes.

24. Plaintiff repeatedly attempted to communicate with both Ms. Jackson and Mr. Wentworth to explain the extremely difficult environment in which she was required to work.

Nothing was ever done about it. There are many emails during the course of Plaintiff's eight months that are consistent with the claims set forth herein, along with the corroborating observations of Plaintiff's team members.

## COUNT I (ADA VIOLATIONS)

25. Plaintiff reiterates and incorporates herein the allegations set forth in paragraph 1through and including paragraph 24 of the Complaint.

28. The Americans with Disabilities Act, supra makes it an unlawful employment practice for an employer, such as defendant BoA to discriminate against an individual because of her disability.

29. By subjecting plaintiff to a hostile work environment that was more hostile for someone with a disability than for others without a disability, but those others without a disability who were underperforming plaintiff, and by not accommodating plaintiff even though she requested such relief, defendant BoA has unlawfully discriminated against plaintiff.

30. Plaintiff submits upon information and belief that BoA was informed of her disability.

31. Plaintiff further submits that upon information and belief that BoA discriminated and retaliated against plaintiff because of her illness resulted in a loss of strength and stamina such that she required flexibility as to her participation in such activities as Snack Day.

32. Plaintiff endeavored to contribute to Snack Day the best she could and asked to be accommodated as to the days and times of her participation. Her request was denied and Snack Day was cancelled.

33. Plaintiff submits that using a frivolous event to discredit and demoralize her was vindictive. The hostile environment and ensuing stress caused further damage to Plaintiff's

health forcing her to leave her contractor position with BoA and denying her the oppoprtunity to be hired as a full time employee.

## COUNT II (ADEA VIOLATIONS)

34. Plaintiff reiterates and incorporates herein the allegations set forth in paragraph 1 through paragraph 33 of this Complaint.

35. It is an unlawful employment practice for a covered employer to discriminate against any individual with respect to her compensation, terms, conditions or privileges of employment, because of such individual's age. 29 U.S.C. §623(a).

36. Plaintiff is 62 years old and in a "protected class" under the ADEA.

37. Plaintiff was singled out for harsh treatment even though she was qualified for the job and received job performance excellent reviews. Her supervisor, who is approximately 35 years of age made disparaging remarks to plaintiff about her age such as, "you can teach an old dog new tricks" and "older people get sicker than younger people." Other employees outside of the protected class were not treated to similar behavior but given the opportunity to advance in their careers at BoA. Plaintiff was denied an opportunity to be hired as have her from the training/probationary period to

## COUNT III (TITLE VII VIOLATIONS)

38. Plaintiff reiterates and incorporates herein the allegations set forth in paragraph 1 through paragraph 37 of this Complaint.

39. 42 U.S.C. § 2000e-2(a) It shall be an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's religion.

40. BoA discriminated against Plaintiff by coercing her, with a barrage of daily emails proselytizing Christianity, and using such emails as a mechanism to undermine and criticize and brow beat Plaintiff, as well as other team members' performance each day. BoA

failed to hire Plaintiff because of her religion and refused her the opportunity to work for BoA as a full time employee.

## RELIEF REQUESTED

Plaintiff respectfully requests be tried to a jury and that plaintiff be awarded a judgment providing her the following relief:

A. The compensation she lost resulting from BoA's unlawful failure to hire her as a full-time employee and her constructive discharge as a contractor employee.

B. The health benefits she would have maintained if defendant had not unlawfully terminated her employment.

C. Compensation for damages in the amount awarded for a jury for emotional anguish and other nonpecuniary losses she suffered as a result of defendant's discrimination and retaliation.

D. An injunction directing defendant BoA to purge plaintiff's employment record file of all derogatory references that are the fruit of defendant BoA's discrimination against plaintiff.

E. Her attorney's fees and costs of bringing this suit.

F. Such further relief as this Court seems to be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury.

Respectfully Submitted,

Shannon Bayona, Esquire
Counsel for Plaintiff
Bar No. 39151
4444 Sanibel Circle, Suite 206
Virginia Beach, VA 23462
(757)319-7557
shannonbayona@gmail.com