

FILED

OCT 8 2013

CLERK, U.S. DISTRICT COURT
NORFOLK VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

JANICE SIGNORE,

        **Plaintiff,**

        v.                            **CIVIL ACTION NO. 2:12cv539**

**BANK OF AMERICA, N.A.,
BAC HOME LOANS SERVICING, LP,
and
DISYS,**

        **Defendants.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court are three Motions to Dismiss filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, filed by Defendants Bank of America, BAC Home Loans Servicing, and DISYS. These matters have been fully briefed and are ripe for judicial determination. For the reasons stated herein, Bank of America's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**, BAC Home Loans Servicing's Motion to Dismiss is **GRANTED**, and DISYS's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Plaintiff is **GRANTED** leave to amend her complaint as to Defendant BAC Home Loans and as to her retaliation claims.

### I. FACTUAL AND PROCEDURAL HISTORY

On September 27, 2012, Janice Signore ("Plaintiff") filed a Complaint alleging that her former employer, Defendant Bank of America, N.A. ("BANA"), and a subsidiary, BAC Home Loans Servicing, LP ("BAC"), discriminated against her on the basis of her age, religious beliefs,

and disability while she worked as a contract employee for BANA. On December 19, 2012, Plaintiff filed an Amended Complaint that added as a defendant DISYS, LLC, a corporation that placed Plaintiff with BANA.

Plaintiff's Amended Complaint alleges that BANA hired Plaintiff through DISYS in June 2011 for a temporary position as a Customer Relations Manager ("CRM") in the Modifications Department at a BANA branch in Norfolk, Virginia. Am. Compl. ¶ 11. Plaintiff's affiliation with BANA ended seven months later in January 2012 when she alleges she was constructively discharged. *Id.* ¶¶ 22, 28-29. Plaintiff is sixty-two years old and was the oldest member of the group of CRMs. *Id.* ¶¶ 12, 28. Plaintiff has had cancer twice, has battled Hodgkin's lymphoma and suffers fatigue and a lack of stamina at the end of the work day. *Id.* ¶¶ 19-20. Soon after beginning her training as a CRM, Plaintiff came into conflict with Tammy Jackson, who was a BANA employee and the supervisor of Plaintiff's group of CRMs. *Id.* ¶ 12. Plaintiff alleges that Jackson quickly began to single out Plaintiff because of her age. *Id.* ¶ 13. In one instance, Jackson berated Plaintiff in front of her coworkers to the point that several coworkers offered Plaintiff their help and support. *Id.* ¶ 14. In addition, Jackson allegedly targeted another older woman, and stated that "old people get sick more than young people" in reference to Plaintiff and immediately added "I guess I should not have said that" at a team meeting. *Id.* ¶¶ 14, 17. At another time, Jackson allegedly said that "you can always teach an old dog new tricks." *Id.* ¶ 1.

Plaintiff and a teammate went to their unit manager Brent Wentworth, a BANA employee, to complain about Jackson. *Id.* ¶ 15. Jackson found out and "made it clear" that "she did not like the fact that Plaintiff had gone over her head." *Id.* Plaintiff also voiced her concerns that she was discriminated against because of her age to DISYS. *Id.* ¶ 18. Plaintiff alleges that DISYS instructed her to not "make waves" because she still had a job with BANA. *Id.*

2

Plaintiff also alleges that she was discriminated against based on her discomfort with receiving daily Christian devotions verses from the Bible over office email. *Id.* ¶ 27. Plaintiff does not indicate a religious affiliation. Jackson sent the emails to the CRM team and applied her version of those texts to how the team behaved that particular day. *Id.* Plaintiff maintains that the emails were designed to berate employees. *Id.* Plaintiff informed Jackson that the emails made her uncomfortable, however Jackson continued to send them to the team. *Id.* Other employees commented that they were offended by Jackson's lack of sensitivity to other religions. *Id.*

Plaintiff also alleges that she was discriminated against because of a disability. Plaintiff has had cancer twice, has battled Hodgkin's lymphoma and suffers from fatigue and a lack of stamina at the end of the work day. *Id.* ¶¶ 19-20. Specifically, Plaintiff alleges that Jackson used her inability to participate in the periodic "Snack Day" as a pretext to recommend Plaintiff's termination. *Id.* ¶ 20. Employees took turns bringing in snacks on each successive Snack Day. *Id.* Plaintiff felt that she may not be able to shop for snacks after work because of her fatigue and low stamina, which result from her previous illnesses. *Id.* When Plaintiff attempted to discuss an alternative with Jackson when it was Plaintiff's turn for Snack Day, Jackson became upset and responded by sending an email to the team that "it was an unhappy day on snack day." *Id.* Jackson subsequently cancelled Snack Day altogether. *Id.*

On Plaintiff's last day of employment, Jackson walked by Plaintiff's desk and said "good morning." *Id.* ¶ 22. Plaintiff did not respond immediately because she had her headset on while helping a customer on the phone. *Id.* Jackson then said "You did not look at me when I said good morning!" and then proceeded into Wentworth's office. *Id.* Plaintiff was then called into Wentworth's office and questioned by Wentworth about Snack Day and not greeting Jackson

3

that morning. *Id.* ¶ 23. When she returned to her desk, Plaintiff received a phone call and email

from DISYS and was informed that she was on "final warning" despite Wentworth not

mentioning anything about the reprimand. *Id.* Plaintiff followed up with Wentworth who also

claimed that he knew nothing about the final warning, so she believes that Jackson had Plaintiff

issued a final warning through DISYS without discussing it with Wentworth. *Id.* Plaintiff

alleges that Jackson's behavior was a strategic move to expedite Plaintiff's removal from BANA.

*Id.* ¶ 24. She says that all of her reviews up to the point of receiving the final warning were

stellar and that the issuance of the final warning was unwarranted and unexpected. *Id.* ¶ 21.

Plaintiff tried to ignore the hurtful and embarrassing personnel practices she endured

while working in an environment that Plaintiff feels was hostile. *Id.* ¶ 25. She believed it was

futile and damaging to her health to continue working at BANA. *Id.* ¶ 29. On January 13, 2012,

Plaintiff filed a Complaint with the Equal Employment Opportunity Commission ("EEOC")

against BANA and DISYS, alleging that she had been discriminated against based on age,

religion, disability, and retaliated against. because of BANA and DISYS's role in her discharge

from employment and wrongful termination. *Id.* ¶ 30. Plaintiff received right to sue letters for

both BANA and DISYS. *Id.* ¶¶ 31, 32. She alleges that there are emails consistent with her

claims, and that other employees could corroborate them as well. *Id.* ¶ 33.

Count 1 of the Amended Complaint alleges discrimination, retaliation, and a hostile work

environment in violation of the Americans with Disabilities Act ("ADA"). Count 2 alleges

unlawful discrimination under the Age Discrimination in Employment Act ("ADEA"). Count 3

claims religious discrimination in violation of Title VII of the Civil Rights Act ("Title VII").[1] On

March 5, 2013, BANA and BAC filed separate Motions to Dismiss. On March 28, 2013,

---

[1] The Amended Complaint also mentions the Virginia Human Rights Act, VA Code 2.2-3900. Am. Compl. ¶ 1. But
it only does so once, and does not lay out a cause of action or Count under that provision. Accordingly, any claim
under that statute is considered abandoned.

Plaintiff filed her Oppositions to the motions. On April 9, 2013, BANA and BAC filed Replies. On March 22, 2013, DISYS filed its Motion to Dismiss, to which Plaintiff filed an Opposition on April 4, 2013. On April 10, 2013, DISYS filed its Reply. This matter is now ripe for judicial determination.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action if the court lacks subject matter jurisdiction. *See* 28 U.S.C. §§ 1331, 1332. The Court assumes that all factual allegations in the complaint are true where the opposing party contends that a complaint fails to allege facts upon which subject matter jurisdiction can be based. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). If the factual basis for jurisdiction is challenged, the plaintiff has the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To determine whether subject matter jurisdiction exists, the reviewing court may consider evidence outside the pleadings, such as affidavits or depositions, *Adams*, 697 F.2d at 1219, or whatever other evidence has been submitted on the issue. *GTE South Inc. v. Morrison*, 957 F. Supp. 800, 803 (E.D. Va. 1997). A party moving for dismissal for lack of subject matter jurisdiction should prevail only if material jurisdictional facts are not in dispute and the moving party is entitled to prevail as matter of law. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

Rule 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. *See* Fed. R. Civ P. 12(b)(6). The Supreme Court has stated that in order "[t]o survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (internal quotations omitted)).

5

Specifically, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Moreover, at the motion to dismiss stage, the Court is bound to accept all of the factual allegations in the Complaint as true. *Id.* at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

### A. BANA's Motion to Dismiss

Defendant BANA makes three arguments in support of its Motion to Dismiss. First, Defendant argues that Plaintiff's Amended Complaint should be dismissed pursuant to Rule 12(b)(1) because the suit was not timely filed. Second, Defendant argues that the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because BANA was not Plaintiff's employer for the purposes of her claims. Third, Defendant argues that Plaintiff's Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because Plaintiff fails to state a claim for discrimination under the ADA, Title VII, and the ADEA.

1. <u>Lack of Subject Matter Jurisdiction: Timeliness</u>

Title 42 U.S.C. § 2000e-5(f)(1) requires a plaintiff asserting an employment discrimination claim to file suit in court within 90 days of receiving a right-to-sue-letter from the EEOC. The Fourth Circuit has held that a court does not have jurisdiction over a claim if the plaintiff fails to properly exhaust administrative remedies as outlined within the relevant statutory text. *See Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 140 (4th Cir. 1995). Defendant

6

asserts that Plaintiff failed to exhaust all possible administrative remedies by not filing her

employment discrimination claim within ninety days after she received a notice of a right-to-sue

letter from the EEOC and cannot go forward with the suit. BANA Mem. in Supp. 4. Plaintiff

filed her suit in federal court on September 27, 2012. Her Amended Complaint includes two

conflicting statements about her right-to-sue letter. First, it says that she "received notice dated

as mailed on June 27, 2012 from the [EEOC]." Am. Compl. ¶ 6; Compl. ¶ 5. Second, it says

that she "received her right to sue letter regarding [BANA] on June 27, 2012." Am. Compl. ¶

31; Compl. ¶ 22. Plaintiff now says that the second statement was a typographical error and that

as indicated by the first statement, the right-to-sue letter was *mailed*, and not received, on June

27, 2012. Pl. Opp. to BANA Mot. to Dismiss 4. She attaches as an exhibit to her Opposition the

EEOC right-to-sue letter, which states that it was mailed on June 27, 2012.

  Rule 6(d) of the Federal Rules of Civil Procedure (formerly Rule 6(e)) provides: "When a

party may or must act within a specified time after service and service is made [by mail], 3 days

are added after the period would otherwise expire . . . ." The Fourth Circuit has applied this rule

where the date of receipt of an EEOC right-to-sue letter is in dispute. *E.g., Nguyen v. Inova*

*Alexandria Hosp.*, 187 F.3d 630, 1999 WL 556446 (4th Cir. 1999) (unpublished). In *Nguyen*,

the court noted that where the actual receipt date is "unknown . . . it is presumed that service by

regular mail is received within three days pursuant to Rule [6(d)]." *Id.* at *3; *see also Baldwin*

*Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 148 (1984) (calculating the presumed date of receipt

of a right-to-sue letter by adding three days to the date of issuance pursuant to Rule 6(e));

*Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 143 & n.3 (1st Cir. 2012) (applying a

"reasonable time" of three to five days to establish date of receipt and noting the approach of

other courts to apply three days under Rule 6(d)).

BANA contends that this presumption only applies where the date of receipt is "unknown" or disputed and that here, Plaintiff herself affirmatively alleged in her Complaint that she received the letter on June 27.  Def. BANA Reply 2.  But as just discussed, Plaintiff's Complaint contains two conflicting statements, and her attached exhibit supports her contention that her statement that she received the letter on June 27 was a typographical error.  Therefore, the Court concludes that the date of receipt is properly determined under Rule 6(d); after adding three days, the time within which Plaintiff was required to file her suit elapsed on September 28, 2012—the day after she filed her Complaint against BANA.  Therefore, BANA's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DENIED**.

　　　　2.  Failure to State a Claim: Employment Relationship

　　　　Defendant BANA alleges that Plaintiff was not its employee and therefore the claims against BANA under Title VII, the ADEA, and the ADA must be dismissed.  Those statutes have nearly identical definitions of employers and employees.  *See* 42 U.S.C. § 2000e(b) (Title VII) (defining employer as "a person engaged in an industry affecting commerce who has fifteen or more employees"); *Id.* § 12111(5)(A) (ADA) (same); 29 U.S.C. § 630(b) (ADEA) (defining employer as "a person engaged in an industry affecting commerce who has twenty or more employees").  *See also* 42 U.S.C. § 2000e(f) (defining employee as "an individual employed by an employer"); *Id.* § 12111(5) (ADA) (same); 29 U.S.C. § 630(b) (ADEA) (same).  Plaintiff and Defendant do not dispute that BANA satisfies the statutory definition of an employer.  Pl. Opp. to BANA Mot. to Dismiss 4.  Instead, the issue is whether there was a sufficient employer-employee relationship between Plaintiff and Defendant.

　　　　Recognizing the circular definition of an employee in many employment statutes such as the ones at issue here, the Supreme Court has concluded in an ADA discrimination case that

8

"when Congress has used the term 'employee' without defining it . . . Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 445 (2003) (quotations omitted). The Fourth Circuit has concluded that this doctrine "emphasizes the importance of the employer's control over the individual." *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 981 (4th Cir. 1983). In *Garrett*, the court addressed an age discrimination claim and determined that control was the most important but not the only factor to consider when assessing whether an employment relationship exists, a case-by-case inquiry. *Id.* at 982. In addition to control, the so-called "*Garrett* factors" include:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; *i.e.,* by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* at 982; *see also Mangram v. Gen. Motors Corp.*, 108 F.3d 61, 62 (4th Cir. 1997) (applying the *Garrett* factors to an ADEA claim). In *Clackamas*, the Supreme Court relied heavily on the EEOC's own definition of an employee, which looks to similar factors. 538 U.S., at 449-50 (citing EEOC Compliance Manual § 605:0009). The EEOC states that "all aspects of the worker's relationship with the employer" must be considered, and looks to whether "[t]he employer has the right to control when, where, and how the worker performs the job," and whether "[t]he work is performed on the employer's premises," among numerous other factors. EEOC Compliance Manual § 605:0009.

9

The facts alleged in the Complaint regarding Plaintiff's employment relationship with DISYS and BANA point to some extent both against and in favor of an employment relationship. The *Garrett* factors in Plaintiff's favor include the fact that Plaintiff worked at a BANA office, Am. Compl. ¶ 1, and apparently was initially trained and later supervised there on a regular basis by BANA employees, *Id.* ¶¶ 12, 14, 20. The primary factors that weigh in Defendant's favor are that Plaintiff was hired only for a temporary position as a contractor, and was employed as a CRM for approximately seven months between June 2011 and January 2012. *Id.* ¶¶ 1, 2. *See Zhenlu Zhang v. Rolls-Royce Seaworthy Sys, Inc.*, 2012 WL 32413 (E.D. Va. Jan. 5, 2012) (finding that a project was only six months "weighed strongly" against an employment relationship).

Finally, the Amended Complaint indicates that *both* DISYS and BANA were responsible for Plaintiff's hiring, firing, and discipline—all key aspects of the requisite control over Plaintiff. It indicates that "[BANA] hired Plaintiff . . . through DISYS in June 2011 for a temporary position." *Id.* ¶ 11. When Plaintiff became initially dissatisfied with her working conditions, she complained with a unit manager at the BANA office and also complained to DISYS. *Id.* ¶¶ 15, 18. Finally, DISYS placed Plaintiff on "final warning," but, Plaintiff alleges, that was only at the behest of her BANA supervisor at the office. *Id.* ¶¶ 23, 24.  As Defendant concedes, a plaintiff in an employment discrimination suit may have more than one employer under a "joint-employment" theory.  BANA Mot. in Supp. 5 (citing *Evans v. Wilkinson*, 609 F. Supp. 2d 489, n.5 (D. Md. 2009)). *See also Murphy-Taylor v. Hofmann*, 2013 WL 4924031, at *19 (D. Md. 2013) (discussing joint and integrated employer tests in the Fourth Circuit).  That DISYS exerted control over Plaintiff in addition to BANA does not preclude BANA from being Plaintiff's

employer. Finally, the EEOC Compliance Manual gives an example of an analogous situation, where an employee might be considered to have two employers:

> A staffing firm hires CP and sends her to perform a long-term accounting project for a client. Her contract with the staffing firm states that she is an independent contractor. CP retains the right to work for others, but spends substantially all of her work time performing services for the client, on the client's premises. The client supervises CP, sets her work schedule, provides the necessary equipment and supplies, and specifies how the work is to be accomplished. CP reports the number of hours she has worked to the staffing firm, which pays her and bills the client. In these circumstances, despite the statement in the contract that CP is an independent contractor, she is an employee of both the staffing firm and the client.

EEOC Compliance Manual § 915.003. *See also Magnuson v. Peak Tech. Servs., Inc.*, 808 F. Supp. 500 (E.D. Va. 1992) (allowing plaintiff to survive summary judgment in similar situation). In sum, although Defendant is correct that Plaintiff has not presented information to satisfy every *Garrett* factor, Plaintiff has pled sufficient facts regarding her employment relationship with BANA to survive BANA's Motion to Dismiss. Accordingly, the Motion to Dismiss on that ground is **DENIED**.

      3. <u>Failure to State a Claim for Discrimination under the ADA, Title VII, and the ADEA</u>

          i. *Count I: ADA*

      BANA also seeks to dismiss the Complaint because Plaintiff has not pleaded facts sufficient to support a viable ADA claim. In a failure to accommodate claim under the ADA:

> a plaintiff establishes a prima facie case by showing (1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations.

*Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n. 11 (4th Cir. 2001). Defendant alleges that Plaintiff has failed to establish any of the four elements of the failure to accommodate claim. BANA Reply in Supp. 4. Plaintiff also alleges general discrimination and a hostile work environment. A

11

wrongful discharge claim requires a plaintiff to show that "(1) she was a qualified individual with a disability; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n. 9 (4th Cir. 2004). Similarly, a hostile work environment claim requires a plaintiff to demonstrate that "(1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive." *Id.*

The ADA defines "disability", as stated in the first element of all of the above ADA claims, as "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. § 12102(1)(A). Major life activities are defined broadly as including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C § 12102(2)(A). In addition, having a physical or mental impairment is not sufficient on its own to establish a disability under the ADA, nor is showing that the impairment merely affects one or more major life activities. Instead, an individual must also show she is *substantially limited* as a result of the impairment. The implementing regulations clarify that "substantially limits" "shall be construed broadly in favor of expansive coverage" and need not "prevent, or significantly or severely restrict, the individual from performing a major life activity." 29 C.F.R. § 1630.2(j). Nonetheless, "not every impairment will constitute a disability" and an individual must be limited "as compared to most people in the general population." *Id.*

12

Plaintiff simply alleges that she suffers from fatigue and lack of stamina at the end of the day due to her prior battles with breast cancer and Hodgkin's lymphoma. Am. Compl. ¶ 20. Plaintiff felt that she "might" not be able to shop for the snacks after a full ten hour workday because of that fatigue. *Id.* She says that she "was not able to participate fully in extracurricular activities" because of having had cancer twice. *Id.* ¶ 19. The Fourth Circuit has held that "an employee under the ADA is not substantially limited if he or she can handle a forty hour work week but is incapable of performing overtime due to an impairment." *Boitnott v. Corning Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (internal quotations omitted). Plaintiff has made no claim that she could not handle the regular demands of the work week, nor does she provide specific information about any impact of her alleged impairment on her life's activities other than implying that she may have been too tired on one occasion to shop after work. *Cf. Nance v. Quickrete Co.*, 2007 WL 1655154, at *3 (W.D. Va. June 5, 2007) (finding that a plaintiff was not disabled where "his only limitation is being able to drive a truck more than eleven hours a day"). Plaintiff simply has failed to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S., at 570. Accordingly, BANA's Motion to Dismiss Plaintiff's ADA claims is **GRANTED**, except for the ADA retaliation claim, which will be discussed below. *See infra* n. 2.

ii. *Count II: ADEA*

Defendant also moves to dismiss Plaintiff's claim for discrimination under the ADEA. Under 29 U.S.C. § 623(a)(1), an employer is not permitted "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." The Fourth Circuit has outlined two ways for a plaintiff to establish an age discrimination claim. Under the first method, a plaintiff may present direct evidence of discrimination. *Hill v.*

13

*Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). *See also Gross v. FBL Fin. Svcs., Inc.*, 557 U.S. 167, 178-79 (2009) ("A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision."). Under the second method, known as the *McDonnell Douglas* burden-shifting framework, a plaintiff must show that the "employer's proffered reason for taking adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

Defendant argues that Plaintiff cannot satisfy the direct evidence test for an ADEA claim because Plaintiff failed to allege sufficient facts to establish employment discrimination based on age. BANA Reply in Supp. 6. But Plaintiff points to two pieces of evidence of direct discrimination. First, she says that her supervisor Jackson remarked that "old people get sick more than young people" and added "I guess I should not have said that." Am. Compl. ¶ 17. Further, she alleges that Jackson "maintain[ed] on at least one occasion that 'you can always teach an old dog new tricks.' " *Id.* ¶ 1. Plaintiff also says that Jackson "did the same thing" to another older woman in the workplace. *Id.* ¶ 14. Even Defendant acknowledges that the Jackson's comments were "close in timing" to Plaintiff's alleged constructive discharge. BANA Reply in Supp. 6. And Jackson allegedly had a key role in that constructive discharge. *Id.* ¶ 22, 23. She also alleges that she was denied the opportunity to advance because of her age. *Id.* ¶ 48. Plaintiff has therefore pled sufficient facts to make out a plausible claim for relief under the ADEA, and so the Court need not address the *McDonnell Douglas* framework at this stage of the litigation. *See Craddock v. Lincoln Nat. Life Ins.*, 2013 WL 3782786, at *3 (4th Cir. 2013). BANA's Motion to Dismiss Plaintiff's ADEA claim is therefore **DENIED**.

14

### iii. *Count III: Title VII*

Plaintiff now concedes that she has failed to make out a viable claim for discrimination based on her religion in violation of Title VII. Pl. Opp. to BANA Mot. to Dismiss 9 ("Plaintiff, however, does not contest Defendant's argument that Plaintiff fails to make a claim for discrimination based on her religion."). Accordingly, BANA's Motion to Dismiss Plaintiff's Title VII claim is **GRANTED**.

### iv. *Retaliation*

Finally, Plaintiff argues that BANA's Motion to Dismiss should be denied because she has made out a claim for retaliation based on her age and alleged disability.[2] Pl. Opp. to BANA Mot. to Dismiss 8. *See* 29 U.S.C. § 623(d) (ADEA) ("It shall be unlawful for an employer to discriminate . . . because [an employee] has opposed any practice made unlawful by this section . . . ."); 43 U.S.C. § 12203 (ADA) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter."). To make out a viable claim under either provision, "a plaintiff must allege that (1) the plaintiff engaged in protected activity, . . . (2) the employer took adverse employment action against the plaintiff; and (3) a causal connection existed between the protected activity and the adverse action." *Krane v. Capital One Servs.*, 314 F. Supp. 2d 589, 610 (E.D. Va. 2004).

Throughout her complaint, Plaintiff alludes to various facts that might satisfy the first element of a retaliation claim. As to her ADEA claim, she notes, for example, that she complained to a unit manager about Jackson, and that she mentioned to DISYS that "she was being discriminated against because of her age." Am. Compl. ¶¶ 15, 18. But she does not explain what specifically she complained to the unit manager about. She also says that Jackson

---

[2] Although the Court has already rejected Plaintiff's claim of discrimination based on disability, "[a] plaintiff may prevail on a disability-retaliation claim even if the underlying claim of disability fails." *Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007).

15

found out about her complaint and "made it clear later that day that she did not like the fact that Plaintiff had gone over her head." *Id.* ¶ 15.   As to her ADA claim, she only says that she attempted to discuss an alternative to Snack Day with Jackson, and that Jackson responded by sending an email saying it was an unhappy day and cancelling Snack Day. *Id.* ¶ 20.

But neither cancelling Snack Day nor telling Plaintiff that she should not have gone over a supervisor's head rises to the level of an adverse employment action. *E.g.*, *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) ("General hostility and comments do not qualify as actionable adverse employment actions unless the hostility was severe and pervasive."). Plaintiff does allege that Jackson gave her a "final warning" as a "strategic move to expedite Plaintiff's removal from the office," despite the fact that her performance reviews had been positive. *Id.* ¶¶ 21, 24. Plaintiff also contends she was constructively discharged. But she does not causally link these potential adverse employment actions with her earlier complaints. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013) (retaliation claims must show but-for causation). And Plaintiff does not explicitly mention any retaliation relating to her age in Count II of her Complaint. *Id.* ¶¶ 43-48. Instead, she says conclusorily that BANA "retaliated against Plaintiff because of her illness," *id.* ¶ 39, and that (also in the context of her ADA claim) DISYS was "aware of the unlawful . . . retaliation." *Id.* ¶ 42.

Accordingly, Plaintiff has failed to identify a plausible claim for relief for an ADEA or ADA retaliation claim, and BANA's Motion to Dismiss Plaintiff's claims of retaliation is **GRANTED**. However, Plaintiff is **GRANTED** leave to amend her complaint on the ADA and ADEA retaliation claims within fifteen (15) days of the date of this Order.

16

**B. BAC's Motion to Dismiss**

Defendant BAC has filed a Motion to Dismiss under Rule 12(b)(6) on the grounds that the Amended Complaint "is devoid of any allegation against BAC." BAC Mem. Supp. Mot. to Dismiss. As BAC notes, the Amended Complaint's sole mention of BAC is that it "is a subsidiary of [BANA], . . . employs over 500 individuals and is an employer engaged in interstate commerce subject to Title VII, the ADA, and the ADEA. But in her Opposition to BAC's Motion, Plaintiff alleges that BANA is BAC's successor by merger as of July 20, 2011. She says that absent discovery it is impossible to discern the precise corporate structure. Pl. Opp. to BAC Mot. to Dismiss 4. BAC replies that Plaintiff is bound by her Amended Complaint, and that dismissal is proper either way: If BAC is an independent subsidiary, it says, then the Complaint must contain allegations against it; but if BANA is a successor to BAC, then the suit is properly brought only against BANA. *But see In re Lacey*, 480 B.R. 13, 19 n. 6. (Bankr. D. Mass. 2012) (granting BANA's motion to be substituted as defendant where plaintiff incorrectly identified BAC as the defendant, and noting that BANA was BAC's successor by merger on September 1, 2011). *See also Kroetch v. BAC Home Loan Servs.*, 2011 WL 4502350, at *1 n.1 (N.D. Cal. Sept. 27, 2011) ("Effective July 1, 2011, [BAC] merged with and into [BANA] . . . . [BANA] is successor by merger to [BAC] and, as a matter of federal law, is deemed to be the same company as [BAC] . . . .").

Because the Amended Complaint does not contain any allegations against BAC, and Plaintiff's subsequent briefing cannot substitute for the pleadings in her complaint, BAC's Motion to Dismiss is **GRANTED**. However, Plaintiff is **GRANTED** leave to amend her complaint regarding BAC within fifteen (15) days of the date of this Order.

17

## C. DISYS's Motion to Dismiss

### 1. ADA

DISYS moves for dismissal of Plaintiff's ADA hostile work environment claim because it says she failed to exhaust administrative remedies by raising such a claim in her charge filed with the EEOC. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). But a hostile work environment claim is simply a specific form of a claim for discrimination, *Burlington Indus. v. Ellerth*, 524 U.S. 742, 752 (1998), and the EEOC charge said that Plaintiff had been discriminated against based on a disability. Moreover, a Plaintiff fails to exhaust only when the "administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in [the] formal suit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). And the facts alleged in the EEOC charge are reasonably related to those that form the basis of a hostile work environment claim in her Amended Complaint. Therefore, DISYS's Motion to Dismiss for lack of subject matter jurisdiction is **DENIED**.

Nonetheless, as discussed above in the context of BANA's Motion to Dismiss, Plaintiff has not shown that she is disabled and has also failed to show a causal connection between any adverse employment action and any protected activity. Therefore, DISYS's Motion to Dismiss Plaintiff's ADA claims is **GRANTED**.

### 2. ADEA

DISYS raises largely the same reasons as BANA in contending that Plaintiff has failed to state a claim of age discrimination under the ADEA. It argues, for example, that there was no causal connection between Jackson's comments and any adverse employment action. For the reasons discussed above, DISYS's Motion to Dismiss Plaintiff's ADEA claims is **DENIED** as to her discrimination claims but **GRANTED** as to her retaliation claim.

3. Title VII

Because Plaintiff has conceded that she fails to raise a viable claim of discrimination

based on religion under Title VII, DISYS's Motion to Dismiss her Title VII claim is

**GRANTED**. Pltf. Mem. Opp. DISYS's Mot. to Dismiss 8.

## IV. CONCLUSION

For the reasons stated above, BANA's Motion to Dismiss is **GRANTED** in part and

**DENIED** in part. BAC's Motion to Dismiss is **GRANTED**. DISYS's Motion to Dismiss is

**GRANTED** in part and **DENIED** in part. Plaintiff is **GRANTED** leave to amend her complaint

as to BAC and as to her ADA and ADEA retaliation claims within fifteen (15) days of the date

of this Order.

The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

IT IS SO **ORDERED**.

Raymond A. Jackson
United States District Judge

Norfolk, Virginia
October 7 , 2013

19